DAVID A. HUBBERT
Deputy Assistant Attorney General

YEN JEANNETTE TRAN
RIKA VALDMAN
BORIS KUKSO
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-616-3366 (v) (Tran)
202-514-6056 (v) (Valdman)
202-353-1857 (v) (Kukso)
202-307-0054 (f)
Y.Jeannette.Tran@usdoj.gov
Rika.Valdman@usdoj.gov
Boris.Kukso@usdoj.gov

*Attorneys for the United States of America*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>KING MOUNTAIN TOBACCO COMPANY, INC.,<br><br>Debtor. | Case No. 20-01808-WLH11<br>Chapter 11<br><br>**THE UNITED STATES' OPPOSITION TO DEBTOR'S DISCLOSURE STATEMENT** |

The United States of America, on behalf of the Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau (the "TTB"), hereby files its opposition to Debtor's Disclosure Statement (ECF No. 155).

The primary purpose of a § 1125 disclosure statement is to provide adequate information to the holders of claims or interests in soliciting their acceptance or rejection of a proposed plan. "Adequate information" is statutorily defined: "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, . . . , that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1).

The adequacy of disclosure statement information is evaluated using numerous factors, including, as relevant here whether it provides: a complete description of the available assets and their value; a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders; an estimate of all administrative expenses, including attorney's fees and accountant's fees; the collectibility of any accounts receivable; information relevant to the risks being taken by the creditors and interest holders; the actual or projected value that can be obtained from avoidable transfers; the existence, likelihood and possible success of nonbankruptcy litigation; and the relationship of the debtor with affiliates. *See In re Reilly*, 71 B.R. 132, 134-35 (Bankr. D. Mont. 1987). *See generally* 7 COLLIER

ON BANKRUPTCY, ¶ 1125.02[2] (Richard Levin & Henry J. Sommer eds., 16th ed.). Even if previously approved by the court, the adequacy of disclosure may be revisited at plan confirmation. *See Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715 (Bankr. E.D. Cal. 1992).

Here, the Disclosure Statement does not provide adequate information in the following areas and Debtor should be required to supplement the Disclosure Statement prior to approval. The United States has provided the following additional requests for information to Debtor and Debtor has indicated it will work to address the requests.

1. <u>The Disclosure Statement Does Not Provide Adequate Information About When Debtor Will Be Entitled To Receive Funds From The Qualified Escrow Accounts.</u>

The Disclosure Statement does not provide sufficient information regarding the Qualified Escrow Accounts that Debtor is required to maintain as a nonparticipating manufacturer under the Master Settlement Agreement for tobacco-related claims.[1]

---

[1] Many state statutes require that tobacco manufacturers who have not signed the Master Settlement Agreement (nonparticipating manufacturers or NPMs) place funds in escrow as a form of self-insurance against tobacco-related claims. *See, e.g.*, Wash. Rev.Code § 70.157.020(b); Va. Code Ann. §§ 3.1–336.1 & 3.1–336.2. Escrow statutes generally specify that for each qualifying unit of tobacco sold, NPMs must make a flat-fee payment into an escrow fund. The NPMs earn interest on the escrow account balances. Pursuant to statute, the money in the escrow account may be released only: (1) to pay a judgment or settlement; (2) as a refund to the NPM for overpayment to the account; or (3) as a refund to the NPM after the funds have

Opposition to
Disclosure Statement
(Case No. 20-01808-WLH11)

The bulk of the payments under the proposed plan are to come from the funds currently placed in the various Qualified Escrow Accounts for the benefit of various states. However, the Disclosure Statement does not disclose:

    a. When funds will become available and in what amounts;

    b. Information about potential judgments/settlements to be paid out the Qualified Escrow Accounts and how much will become available in light of possible judgments; and

    c. Copies of the Escrow agreements.

The requested information above is necessary for a creditor to assesses the liquidation analysis, to evaluate the risk, and to make an informed judgment about the proposed plan.

2. <u>The Disclosure Statement Does Not Provide Adequate Information About Debtor's Potential Recovery From Related Entities.</u>

The Disclosure Statement lists about $13M owed to Debtor from affiliated entities (ECF No. 155 at 10), but provides no specific information about potential recovery of those funds:

    a. Wheeler Logging (about $4.2M) "no longer has any significant sources of revenue;"

---

been in the account for 25 years. *See King Mountain Tobacco Co. v. McKenna*, 768 F.3d 989, 992 (9th Cir. 2014); *Star Sci. Inc. v. Beales*, 278 F.3d 339, 346 (4th Cir. 2002).

b. Wheeler Rock Products (about $1.5M) "has only recently become profitable, and it shall repay King Mountain for its Affiliate Receivable over the course of the next five years;"

   c. Wheeler Cattle (about $1.9M) "repayment of Wheeler Cattle's respective Affiliate Payable is dependent is cattle sales;"

   d. Mountain Tobacco Distributing Inc. (about $4.7M) "Mountain Tobacco has no physical assets. … This Affiliate Receivable is ultimately not collectible;"

   e. Wheeler Fuel Distribution (about $249K) "Wheeler Fuel shall repay King Mountain for its Affiliate Receivable over the course of the next four years;" and

   f. Wheeler Pawn Stars (about $282K) "Wheeler Pawn Starts shall repay King Mountain for its Affiliate Receivable over the course of the next four years."

ECF No. 155 at 9-10, 14-15.

Debtor valued affiliated entity receivables at over $13M, and Debtor's cursory explanation of the affiliates' financial condition, lack of collectability, and/or repayment schedule without detail is insufficient.

Debtor has access to these entities' books and records and should be able to provide accurate financial data about the affiliate entities' assets and recovery

potential in sufficient detail to allow a creditor to make an informed judgment about the proposed plan, including:

   a. Consolidated financial statements for 2020 that show Debtor's entire business enterprise, including the affiliate entities with which Debtor conducts business;

   b. A description of Debtor's business relationship with all affiliate entities on a going forward and post-confirmation basis, specifically setting forth whether Debtor intends to sell tobacco products to these entities or to buy goods produced by them or any other on-going business relationship;

   c. Financial statements for affiliate entities that Debtor intends to have on-going business transactions;

   d. Financial statements for affiliate entities where Debtor paid start-up costs; and

   e. For any affiliate entities that owe Debtor on a pre-confirmation receivable, all documents that memorialize any repayment terms and financial statements for these affiliates to determine whether they are capable of making payments.

Additionally, the Disclosure Statement does not identify potential avoidance actions (including those against affiliate entities) and does not state a projected value that can be obtained from such actions.

Opposition to
Disclosure Statement
(Case No. 20-01808-WLH11)

- 6 -

3. <u>The Disclosure Statement Does Not Provide Adequate Information About Compensation To Insiders.</u>

The Disclosure Statement has not disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider, as required under 11 U.S.C. § 1129(a)(5)(B). The Disclosure Statement does indicate that Debtor's shareholder Ms. Wheeler does not "draw a salary from the Debtor" (ECF No. 155 at 15), but does not disclose the nature of any compensation in the future.

WHEREFORE, the United States respectfully requests that the Court deny approval of the Debtor's Disclosure Statement, as it fails to comply with the requirements of 11 U.S.C. § 1125.

DATED: February 1, 2021.

            DAVID A. HUBBERT
            Deputy Assistant Attorney General

            */s/ Yen Jeannette Tran*
            YEN JEANNETTE TRAN
            RIKA VALDMAN
            BORIS KUKSO
            Trial Attorneys, Tax Division
            U.S. Department of Justice

            *Attorneys for the United States of America*

Opposition to
Disclosure Statement
(Case No. 20-01808-WLH11)

- 7 -

20-01808-WLH11 Doc 169 Filed 02/01/21 Entered 02/01/21 11:45:01 Pg 7 of 8

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 1, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all CM/ECF participants who have thus far appeared in this action.

                                */s/ Yen Jeannette Tran*
                                YEN JEANNETTE TRAN
                                Trial Attorney
                                United States Department of Justice,
                                Tax Division