DINA L. YUNKER (WSBA #16889)
Assistant Attorney General
Bankruptcy & Collections Unit
800 Fifth Avenue, #2000
Seattle, WA 98104
Tel.: (206)389-2198
Email: dina.yunker@atg.wa.gov
*Local Counsel for the States*

PATRICIA MOLTENI (DC Bar # 980878)
National Association of Attorneys General
1850 M Street, N.W., 12th Floor
Washington D.C. 20036
Tel.: 202-326-6251
Email: pmolteni@naag.org
*Counsel for the States (Pro Hac Vice Motion pending)*

Judge Whitman L. Holt

Chapter 11

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WASHINGTON**

In re

KING MOUNTAIN TOBACCO COMPANY, INC.,

Debtor.

Case No. 20-01808

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

The States[1] object to the *Disclosure Statement for the Debtor's Plan of Reorganization* ("Disclosure Statement" or "DS") [Doc. No. 155] because it

---

[1] "States" refers collectively to the tobacco regulatory agencies of the States of Indiana, South Carolina, and New York—in all of which the Debtor has previously sold tobacco products (although not it is not doing so currently) and all of which are creditors in this bankruptcy case.

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

1

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 1 of 11

fails to provide adequate information as required under § 1125 of the Bankruptcy Code. Specifically, disclosures on the below matters are inadequate because they fail to provide sufficient information for the States to reasonably determine if the Debtor's Plan of Reorganization ("Plan") [Doc. No. 156] is feasible or has an adequate means of implementation. The States also join in the *United States' Opposition to Debtor's Disclosure Statement* [Doc. No. 196].

## Regulatory Background

The States regulate the Debtor's sale of cigarettes and other tobacco products in their respective states. As part of their regulatory responsibilities, the States enforce laws that require the Debtor, as a "Non-Participating Manufacturer" ("NPM")[2], to deposit into an escrow account, held for the benefit of each State, a set amount per cigarette unit sold in that State (referred to collectively as the "Escrow Statutes").[3] The per cigarette deposit amount increases each year based on an inflation adjustment, and for cigarettes sold in

---

[2] Tobacco manufacturers fall into two categories: those that have settled with the States and become "Participating Manufacturers" or "PMs" under the tobacco Master Settlement Agreement ("MSA") executed in November 1998 and that make direct payments to the States in recognition of the health care costs imposed by their products; and those that have not settled, the NPMs, who must instead make deposits into an escrow account that are roughly equivalent in cost to the payments made by the PMs. The escrow account holds funds that may be utilized to satisfy judgments obtained by the States in cases filed against the NPMs with respect to their tobacco sales that could be of the nature as those that were settled against the PMs in the MSA.

[3] Each State has an Escrow Statute requiring NPMs to make escrow deposits on their cigarette sales, and these laws are nearly identical to each other. As an example, South Carolina's escrow statute is codified at S.C. Code Ann. §§ 11-47-10-40.

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

2

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 2 of 11

calendar 2020, the per carton amount was $7.37. Failure to make timely escrow deposits can result in removal of the Debtor from a State's directory of approved tobacco manufacturers (a process called "delisting"). Once removed from the directory, a tobacco manufacturer must immediately stop making any further cigarette sales in that state, and its existing product typically becomes unlawful contraband subject to seizure.[4]

### States' Treatment under the Plan

Several years before the Debtor filed for bankruptcy, it had been certified to sell tobacco products in South Carolina and Indiana but was delisted by each State when it failed to make its required escrow deposits for cigarettes sold there. In 2015, King Mountain entered into a settlement agreement with the State of Indiana whereby it agreed to pay all its past due escrow deposits (about $4.9 million) over a period of 13 years. Only once fully paid, the Debtor could reapply to be listed on Indiana's directory. In 2016, the Debtor entered into a similar settlement agreement with the State of South Carolina. Under this settlement, it agreed to pay about $2.9 million in past due escrow over a period

---

[4] The laws requiring tobacco companies to be listed on a directory of approved manufacturers are called "Directory Laws" and were passed by the States to enhance their ability to enforce their Escrow Statutes. Each State has passed Directory Laws, and they are substantially the same. As an example, South Carolina's Directory Laws are codified at S.C. Code Ann. §§ 11-48-10-110.

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

3

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 3 of 11

of 14 years—at the end of which it could reapply to be listed on South Carolina's directory.

Under the Plan, the Debtor proposes to pay the outstanding portion of these escrow obligations ($3.5 million for Indiana and $2.5 million for South Carolina) over a period of 12 years for Indiana and 14 years for South Carolina.

The State of New York is not listed as a creditor in the Debtor's schedules but has been investigating the Debtor's conduct and anticipates filing a proof of claim for past due escrow owed on cigarette sales made in New York and for penalties arising from the Debtor's failure to comply with the Prevent All Cigarette Trafficking Act of 2009 ("PACT Act"), 15 U.S.C. §§ 376(a)(1) and (2), relating to unlawful shipments of cigarettes into New York. New York seeks certain sales records and PACT Act reports from the Debtor to complete its claim. The Plan does not provide for treatment of this anticipated claim.

**Inadequate Information in the Disclosure Statement**

The Disclosure Statement fails to provide adequate information about the below matters, without which the States cannot make an informed decision about the Plan:

1. **The Debtor's calendar year 2020 financial performance.** While the Disclosure Statement provides financial statements for calendar years 2018

STATES' OBJECTION TO THE ADEQUACY
OF THE DEBTOR'S DISCLOSURE
STATEMENT

4

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 4 of 11

and 2019, there is nothing that covers 2020. The States cannot make an informed decision about the feasibility of the Debtor's Plan without financial statements covering 2020. The Disclosure Statement should include the same financial statements for 2020 as it does for 2019 and 2018.

2. **The factual basis for the Debtor's 5-year projections.** The Debtor's 5-year projections (2021-2025) predict a steady increase in Tobacco Sales, Total Cash Receipts, and Net Cash Flow (DS, Ex. A at p. 1) in each post-confirmation year, but there is no factual basis provided in the Disclosure Statement to support these increases. For example, the Debtor projects that Tobacco Sales will increase by about $500,000 each year from 2021 through 2025, but its Income Statements for 2018 and 2019 (DS, Ex. B at p. 8 and Ex. C at p. 14) show that its Tobacco Sales dropped by about $700,000 from 2018 to 2019.

Similarly, net income for 2018 and 2019 is -$6.5 million and -3.6 million respectively. (DS, Ex. B at p. 5 and Ex. C at p. 14.) Yet, the Net Cash Flow for the Debtor's projections show an ever-increasing amount of cash, growing from $162,000 in 2022, to $722,000 in 2025. (DS, Ex. A at p. 1.) There is no explanation in the Disclosure Statement for these significant improvements in the Debtor's tobacco manufacturing operations. The Disclosure Statement fails

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

5

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 5 of 11

to provide any factual basis for the Debtor's belief that its tobacco sales will continue to rise in each of the next five years and that its profitability will similarly improve; yet, these metrics are essential to providing it with sufficient cash to make its Plan payments to creditors. Without this additional information, the Disclosure Statement lacks adequate information on which the States can make a decision about the feasibility of the Plan.

3. **Payments from Affiliates.** In the Disclosure Statement, the Debtor identifies several Affiliates for which it has provided start-up financing—specifically, Wheeler Fuel Distribution, Wheeler's Pawn Stars, and Wheeler Rock Products. (DS, pp. 14-5.) Under the Plan, these Affiliates are required to repay these debts to the Debtor over the next four to five years. Collectively, these debts total about $2.1 million. No information is provided in the Disclosure Statement about the financial ability of these Affiliates to repay these debts or the repayment terms other than the total number of years. The Disclosure Statement should set forth all material repayment terms, including interest rate and frequency of payments. In addition, the Disclosure Statement should include financial statements for 2020 and 2019 for each of these Affiliates. The Debtor should also clarify if it intends to continue to provide

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

6

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 6 of 11

financing or have any business transactions with these Affiliates during the first five years following confirmation.

4. **On-going business relationships with Affiliates.** The Debtor appears to have on-going business relationships with several Affiliates including Mountain Tobacco Distributing, Wheler Fuel Distribution, Wheeler Kountry Korner, Wheeler Smoke N Gas, and Wheeler Cattle. (DS, pp-14-5.) The Debtor should clarify in its Disclosure Statement if it intends to continue to do business with any of these Affiliates (or any other Affiliate) post-confirmation, and, if so, identify the financial terms of these relationships so that creditors can determine if these are arms-length transactions that provide the Debtor with reasonably equivalent value or, if instead, the transactions are actually subsidies that keep these Affiliates financially afloat to the detriment of the Debtor.

For example, the Debtor states that it pays the wages and salaries for Wheeler Cattle and that this Affiliate repays these costs "as cattle is sold". (DS, at p. 15.) The Debtor also discloses that Wheeler Cattle owes the Debtor about $2 million in pre-petition debt the repayment of which is also dependent on future cattle sales. *Id.* The Disclosure Statement should explain why the Debtor continues to finance the operations of this Affiliate and explain, what if any, financial benefit this continuing relationship provides to the Debtor.

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

7

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 7 of 11

Conversely, if there is no benefit, the Debtor should disclose the financial loss that this relationship is expected to cost the Debtor in 2020 and in each of the five years post-confirmation.

Similarly, the Debtor should disclose the factual basis on which its asserts in that "all transactions between [the Debtor and Affiliates, Wheeler Kountry Korner and Wheeler Smoke N Gas,] are at arms' length." (DS, at p. 14.)

5. **Consolidated Financial Statements.** To the extent the Debtor's tobacco manufacturing operations are financially intertwined with Affiliates like Wheeler Cattle, Mountain Tobacco Distributing, Inc., Wheeler Kountry Korner, Wheeler Smoke N Gas, and any other Affiliate, the Disclosure Statement should include consolidated financial statements with all such Affiliates covering 2018, 2019, and 2020; otherwise, it is not possible for creditors to determine whether the Debtor's business operations benefit from these relationships or are merely subsidizing unprofitable Affiliates.

6. **Post-confirmation compensation for management.** The Debtor states that Trina Wheeler, the 100% owner of the Debtor and its Manager and President, does "not draw a salary from the Debtor". (DS at p. 15.) The Debtor should disclose how Ms. Wheeler is compensated for her work for the Debtor and whether her compensation will change post-confirmation, and if so, how.

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

8

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 8 of 11

With respect to the other officers and directors of the Debtor, their post-confirmation compensation also needs to be disclosed.

7. **Chapter 7 liquidation analysis.** The Debtor provides a brief narrative estimating the liquidation value of its Qualified Escrow Fund accounts but fails to provide a liquidation value for any of its other assets. (DS, at p. 19-20.) The Disclosure Statement should provide a spreadsheet listing all the Debtor's current estimated administrative expenses, priority expenses, secured and unsecured claims, together with the Debtor's estimated values for each asset (including equipment, accounts receivable, fraudulent transfer claims, etc.), including the source for these values. The liquidation analysis should also provide a present value calculation of the payment to creditors under the proposed plan versus payment under a liquidation. Without this information, it is not possible for the States to determine if they would receive more under a Chapter 7 liquidation than under the Plan.

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

9

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 9 of 11

WHEREFORE, the States ask that the court deny approval of the Disclosure Statement.

DATED this 2nd day of February, 2021.

ROBERT W. FERGUSON,
Attorney General

*/s/ Dina Yunker*
DINA L. YUNKER, WSBA No. 16889
Assistant Attorney General
*Local Counsel for the States*

NAT'L ASSOC. OF ATTORNEYS GENERAL

*/s/ Patricia Molteni*
PATRICIA MOLTENI, DC Bar No. 980878
Counsel
Center for Tobacco and Public Health
*Counsel for the States (Pro Hac Vice Motion pending)*

STATES' OBJECTION TO THE ADEQUACY OF THE DEBTOR'S DISCLOSURE STATEMENT

10

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 10 of 11

# CERTIFICATE OF SERVICE

I certify that on February 2, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System which, in turn, automatically generated a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system in this case. The Notice of Electronic Filing for the foregoing identifies all recipients.

By  */s/ Patricia Molteni*
Patricia Molteni, DC Bar # 980878

11

OFFICE OF THE ATTORNEY GENERAL
Bankruptcy & Collections Unit
800 Fifth Avenue, Suite 2000
Seattle, Washington 98104-3188
Phone: (206) 389-2187 – Fax (206) 587-5150

20-01808-WLH11    Doc 172    Filed 02/02/21    Entered 02/02/21 09:00:24    Pg 11 of 11