JAMES L. DAY (WSBA #20474)
RICHARD B. KEETON (WSBA #51537)
BUSH KORNFELD LLP
601 UNION STREET, SUITE 5000
SEATTLE, WA  98101
Tel:  (206) 292-2110
Email:  jday@bskd.com
Email:  rkeeton@bskd.com

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>KING MOUNTAIN TOBACCO COMPANY, INC.,<br><br>Debtor. | No. 20-01808-WLH11<br><br>DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION |

Debtor King Mountain Tobacco Company, Inc. (the "Debtor"), debtor-in-possession in the above-captioned bankruptcy case, proposes the following Plan of Reorganization (the "Plan") pursuant to Subchapter III of Chapter 11 of the Bankruptcy Code:

### ARTICLE I.
### DISCLOSURE STATEMENT

The Debtor has filed a Disclosure Statement pursuant to 11 U.S.C. § 1125 and Bankruptcy Rule 3016(c).  The Disclosure Statement has been approved by the Bankruptcy Court prior to this Plan being submitted to creditors.  The Disclosure Statement provides useful information to aid and assist creditors in voting on the Plan. YOU ARE URGED TO READ THE DISCLOSURE STATEMENT WITH CARE IN EVALUATING THE IMPACT OF THE PLAN UPON YOUR CLAIMS.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

## ARTICLE II.
## DEFINITION OF TERMS

### A.    Definitions

A term used in this Plan that is not defined below and that is defined in the Bankruptcy Code shall have the meaning ascribed in the Bankruptcy Code.  When used in this Plan, the following terms shall have the meanings specified below, unless the context otherwise requires:

1.    <u>Administrative Convenience Claim</u>:  All Allowed Claims (i) in the amount of $1,000.00 or less, and (ii) in an amount greater than $1,000.00 of claimants electing to be treated as if holding an Allowed Claim in the amount of $1,000.00.

2.    <u>Administrative Expense Claim</u>:  An Allowed Claim entitled to priority under § 507(a)(2) of the Bankruptcy Code, including (a) claims incurred by the Debtor since the Petition Date and allowed by the Court of a type described in § 503(b) of the Code; (b) all Allowed Claims of Professional Persons pursuant to §§ 330 and 331 of the Code and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930.

3.    <u>Affiliates</u>:  Mountain Tobacco Distributing Inc.; Wheeler Cattle; Wheeler Fuel Distribution, LLC; Wheeler Kountry Korner; Wheeler Logging Services, Inc.; Wheeler Rock Products, LLC; Wheeler Smoke N Gas; and Wheeler's Pawn Stars.

4.    <u>Affiliate Receivable</u>:  An amount owing to the Debtor by an Affiliate, regardless of its collectability.

5.    <u>Agricultural Lease</u>:  The Agricultural Lease, in the form attached hereto as **Exhibit A**, that the Debtor (as lessee) shall enter into with the Equity Holder (as lessor), as of the Effective Date, of certain real property and improvements therein described that form a portion of the Debtor's operating premises.

6.    <u>Allowed Claim</u>:  Any Claim in the amount and of the priority classification set forth in the proof of such Claim that has been filed timely in the Bankruptcy Case, or in the absence of such proof, as set forth in the Debtor's schedules of liabilities filed in the Bankruptcy Case, unless:

(i) such Claim has been listed in such schedules as disputed, contingent, or unliquidated, in which case such Claim shall be allowed only in such amount and such classification as is authorized by Final Order of the Bankruptcy Court;

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

(ii) such Claim has been objected to or is objected to after Confirmation, in which case such claim is authorized by Final Order of the Bankruptcy Court; or,

(iii) such Claim has been paid in full, withdrawn, or otherwise deemed satisfied in full.

7. <u>Avoidance Claims</u>: Any Claim or cause of action of the Estate arising out of or maintainable pursuant to Chapter V of the Bankruptcy Code or under any other similar applicable law.

8. <u>Ballot</u>: The form for acceptance or rejection of the Plan distributed to those Creditors entitled to vote on the Plan. Any Ballot which is executed by the holder of an Allowed Claim but which does not indicate an acceptance or rejection of the Plan shall be deemed to be an acceptance of the Plan.

9. <u>Bankruptcy Case</u>: The chapter 11 case of the Debtor pending before the Bankruptcy Court, administered under Case No. 20-01808.

10. <u>Bankruptcy Code or Code</u>: The Bankruptcy Code enacted November 6, 1978, as set forth in Title 11 of the United States Code, and as amended thereafter.

11. <u>Bankruptcy Court or Court</u>: The United States Bankruptcy Court for the Eastern District of Washington at Yakima, before which the Bankruptcy Case is pending, or if that Court ceases to exercise jurisdiction over the Bankruptcy Case, the Court that does exercise jurisdiction.

12. <u>Bankruptcy Rules</u>: The Federal Rules of Bankruptcy Procedure.

13. <u>BIA</u>: The Bureau of Indian Affairs, an agency of the United States.

14. <u>(The) Business</u>: The business operations of the Debtor.

15. <u>Business Day</u>: Any day except Saturday, Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a)(6).

16. <u>Business Lease</u>: The Business Lease Between Trina Ann Wheeler and King Mountain Tobacco Company Inc., in the form attached hereto as **Exhibit B**, that the Debtor (as lessee) shall enter into with the Equity Holder (as lessor), as of the Effective Date, of certain real property and improvements therein described that form a portion of the Debtor's operating premises.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

17. <u>Cash</u>:  Cash or cash equivalents including, but not limited to, bank deposits, wire transfers, checks, and other similar items.

18. <u>Claim</u>:  A claim as defined in § 101(5) of the Bankruptcy Code.

19. <u>Claims Bar Date</u>: December 4, 2020, the deadline for filing Proofs of Claim in this Bankruptcy Case by non-Governmental Units, and March 24, 2021 for Governmental Units.

20. <u>Class</u>:  A class of Claims or Interests as defined in Article III of this Plan.

21. <u>Class 1 Claim</u>:  Has the meaning set forth in Section IV.B.1 of the Plan.

22. <u>Class 2 Claim</u>:  Has the meaning set forth in Section IV.B.2 of the Plan.

23. <u>Class 3 Claim</u>:  Has the meaning set forth in Section IV.B.3 of the Plan.

24. <u>Class 4 Claim</u>:  Has the meaning set forth in Section IV.B.4 of the Plan.

25. <u>Class 5 Claim</u>:  Has the meaning set forth in Section IV.B.5 of the Plan.

26. <u>Class 6 Claim</u>:  Has the meaning set forth in Section IV.B.6 of the Plan.

27. <u>Class 7 Claim</u>:  Has the meaning set forth in Section IV.B.7 of the Plan.

28. <u>Class 8 Claim</u>:  Has the meaning set forth in Section IV.B.8 of the Plan.

29. <u>Class 9 Claim</u>:  Has the meaning set forth in Section IV.B.9 of the Plan.

30. <u>Class 10 Claim</u>:  Has the meaning set forth in Section IV.B.10 of the Plan.

31. <u>Confirmation</u>:  The entry of the Order of Confirmation by the Bankruptcy Court.

32. <u>Creditor</u>:  A "creditor" within the meaning of § 101(10) of the Bankruptcy Code.

33. <u>Debtor</u>:  King Mountain Tobacco Company, Inc., the debtor in possession in this Bankruptcy Case.

34. <u>Delisting</u>:  A State's removal of an NPM from its directory or list of NPMs that are authorized to sell tobacco products in that State or any other action of a State to prevent an NPM from selling tobacco products in that State.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

35.     Disputed Claim:  A filed or scheduled Claim of an alleged creditor that was listed in a Debtor's Schedules as "disputed," and which has not subsequently been allowed, or as to which a party-in-interest has filed an objection.

36.     Effective Date:  The first Business Day that is at least three (3) Business Days following the entry of the Order of Confirmation.

37.     Entity:  Shall have the meaning set forth in § 101(15) of the Code.

38.     Equity Holder: Trina Wheeler, the Holder of all the Equity Interests.

39.     Equity Interest:  An equity interest in the Debtor.

40.     Escrow Account:  An account established for the benefit of an Escrow State pursuant to such state's Escrow Statutes into which the Debtor makes periodic deposits.

41.     Escrow Account Income:  From time to time, income earned on Escrow Funds that is distributable to the Debtor or Reorganized Debtor.

42.     Escrow Funds:  From time to time, the total of all funds the Debtor or Reorganized Debtor shall have deposited into an Escrow Account.  Escrow Funds shall not include Escrow Account Income.

43.     Escrow Release Date:  Each date that Escrow Funds from an Escrow Account would be released and distributable to the Debtor or Reorganized Debtor, generally twenty-five (25) years after such Escrow Funds were deposited into the Escrow Account, as summarized in Exhibit D hereto.

44.     Escrow State(s):  Each state for the benefit of which the Debtor has established an Escrow Account.

45.     Escrow Statutes:  Generally, the laws enacted by each Escrow State in connection with the MSA that require NPMs (such as the Debtor) to deposit a specified sum per tobacco unit sold in such Escrow State into an Escrow Account, on a periodic basis, to serve as a resource for payment of any judgment ultimately obtained by a State for tortious conduct of an NPM.

46.     Estate:  The Estate created for the Debtor pursuant to § 541 of the Bankruptcy Code.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

47.     Federal Judgment Rate: The rate of interest in effect as of the Effective Date provided for under 28 U.S.C. § 1961 for postjudgment interest in federal court proceedings.

48.     Governmental Unit: A "governmental unit" as defined in § 101(27) of the Bankruptcy Code.

49.     Holder: A holder of a Claim or Equity Interest as the case may be.

50.     IRS: The Internal Revenue Service.

51.     MSA: That certain Master Settlement Agreement entered into in November 1998, originally between the four largest United States tobacco companies (collectively, the original participating manufacturers or "OPMs") and the Settling States, which brought an end to years of litigation over tobacco-related illnesses. Under the MSA, OPMs agreed to restrict their advertising and marketing practices and make specified payments to Settling States each year in perpetuity. The MSA also provided incentives for Settling States to pass the Escrow Statutes applicable to NPMs.

52.     Notice and Hearing: Proceedings as contemplated under Bankruptcy Code § 102(1).

53.     NPM: A Non-Participating Manufacturer as that term is defined in the MSA or Escrow Statutes – a tobacco company that did not participate in the MSA. The Debtor is an NPM.

54.     Order of Confirmation: The order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

55.     Petition Date: September 25, 2020, the date upon which the Debtor commenced its Bankruptcy Case.

56.     Plan: The Debtor's Plan of Reorganization, as such may be amended from time to time.

57.     Priority Tax Claims: Allowed Claims of Governmental Units for the principal amount of a tax within the meaning of § 507(a)(8) of the Code, and statutory interest accruing thereon prior to the Petition Date.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

58.    <u>Professional Person</u>:  A person, including a trustee (if one is appointed), retained or to be compensated pursuant to §§ 326, 327, 328, 330, and/or 1103 of the Bankruptcy Court.

59.    <u>Reorganized Debtor</u>:  The Debtor on and following the Effective Date.

60.    <u>Schedules</u>:  The schedules of assets, liabilities and executory contracts and the statement of financial affairs filed on behalf of the Debtor pursuant to § 521 of the Bankruptcy Code, and in accordance with the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

61.    <u>Secured Claim</u>:  An Allowed Claim that is a secured Claim against a Debtor determined in accordance with § 506(a) of the Bankruptcy Code.

62.    <u>Settling State(s)</u>:  One (or more than one, as the context requires) of the 46 states that are signatories to the MSA.

63.    <u>SOFA</u>: The Statement of Financial Affairs the Debtor filed in the Bankruptcy Case.

64.    <u>Sublease</u>:  The Real Property Sublease Agreement, in the form attached hereto as **<u>Exhibit C</u>**, that the Debtor (as sublessee) shall enter into with the Equity Holder (as sublessor), as of the Effective Date, of certain real property and improvements therein described that form a portion of the Debtor's operating premises.

65.    <u>Tax Lien</u>:  The lien created by TTB's filing of a Notice of Federal Tax Lien on September 24, 2020, to the extent of its enforceability.

66.    <u>Tax Lien Property</u>:  The property of the Estate that is subject to and encumbered by the Tax Lien.

67.    <u>TTB</u>:  The Alcohol and Tobacco Tax and Trade Bureau, a bureau of the United States Department of the Treasury, which regulates and collects taxes on trade and imports of alcohol, tobacco, and firearms within the United States, and the Holder of the Class 1 Claim.

68.    <u>Unsecured Claim</u>:  An Allowed Claim that is (a) based upon (i) a proof of claim executed and filed in accordance with Bankruptcy Rule 3003(c) prior to the Claims Bar Date, or (ii) the listing of the Claim in the Debtor's schedules of liabilities

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

as other than disputed, contingent or unliquidated, and (b) not a Secured Claim or an Unclassified Claim.

**B.     Rules of Interpretation**

The rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the Plan.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims, as defined in § 101(4) of the Bankruptcy Code, against the Debtor are classified as set forth herein.  A Claim is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

> Class 1:  Secured Claim of the TTB
> Class 2:  Secured Claim of FIRST Insurance Funding
> Class 3:  Unsecured Claim of the State of Indiana
> Class 4:  Unsecured Claim of the State of South Carolina
> Class 5:  Unsecured Claim of the U.S. Department of Agriculture
> Class 6:  Unsecured Claim of the U.S. Food & Drug Administration
> Class 7:  Administrative Convenience Claims
> Class 8:  General Unsecured Claims
> Class 9:  Affiliate Claims
> Class 10:  Equity Interests

## ARTICLE IV.
## PROVISIONS FOR SATISFYING CLAIMS AND SPECIFYING
## TREATMENT OF EACH CLASS UNDER THE PLAN

The treatment of all Allowed Claims and Allowed Interests shall be as follows:

**A.     Unclassified Claims**

There are nine classes of Claims and one class of Equity Interests, and certain other Claims are Unclassified Claims pursuant to applicable provisions of the Bankruptcy Code.  If the Court confirms the Plan and the Plan becomes effective, the Class into which each Allowed Claim and Allowed Interest fits will determine the manner in which such Claim or interest will be treated.  The Classes defined are as follows.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION – Page 8

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

1. <u>Unclassified Claims</u>.

 a. <u>Administrative Expense Claims</u>. As defined herein, Administrative Expense Claims are (a) claims incurred by the Debtor since the Petition Date and allowed by the Court of a type described in § 503(b) of the Code; (b) all Allowed Claims of Professional Persons pursuant to §§ 330 and 331 of the Code and Bankruptcy Rule 2016; and (c) all fees and charges assessed against the Estate under 28 U.S.C. § 1930. Claims incurred in the ordinary course of the Debtor's business following the Petition Date shall be paid in the ordinary course of business in accordance with the terms and conditions of the particular agreements governing such obligations. Claims of Professional Persons shall be paid on the later of the Effective Date or the date each such Claim becomes an Allowed Claim. Claims arising under 28 U.S.C. § 1930 shall be paid as required under such statutory section.

 b. <u>Priority Tax Claims</u>. Priority Tax Claims shall include the principal portion of the applicable tax and interest accrued thereon through the Effective Date. According to the Schedules and Proofs of Claim that have been filed in this Bankruptcy Case, the following Priority Tax Claims are alleged to exist:

| Claimant | Type of Claim | Amount |
|---|---|---|
| Internal Revenue Service | Taxes | $73,570.59 |
| **Total:** | | **$73,570.59** |

Any amounts that comprise penalties shall not be Priority Tax Claims but shall be deemed to be and treated as Unsecured Claims under Class 7 (if the holder of the Claim so elects) or Class 8. Each Priority Tax Claim shall be paid in full in equal monthly payments commencing in the first full month following the Effective Date based upon an amortization equal to sixty (60) months less the number of full calendar months between the Petition Date and the Effective Date. (By way of example only, if the Effective Date occurs in March 2021, the amortization would be over a period of 53 months.) Simple interest shall accrue on each Priority Tax Claim at the Federal Judgment Rate until paid in full.

**B. Classified Claims and Interests**

**1. <u>Class 1</u>: Secured Claim of the TTB**

 Class 1 consists of the Secured Claim of the TTB (the "<u>Class 1 Claim</u>"), as more fully described below. The Class 1 Claim shall be paid according to the following terms:

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION – Page 9

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

20-01808-WLH11    Doc 199    Filed 03/17/21    Entered 03/17/21 16:39:24    Pg 9 of 28

a.      <u>Identification of Claim</u>.  The Class 1 Claim is based upon a judgment against the Debtor and in favor of the TTB for unpaid excise taxes, interest and penalties.  According to a Proof of Claim that it filed, TTB alleges that its Secured Claim totaled $75,386,614.25 as of the Petition Date.

b.      <u>Allowance of Claim</u>.  The Class 1 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor and the TTB may agree or the Court may determine following Notice and Hearing.

c.      <u>Retention of Security Interest</u>.  The Holder of the Class 1 Claim shall retain the lien of the Tax Lien against and security interests in the Tax Lien Property until all payments on account of the Class 1 Claim has been made.

d.      <u>Payment</u>:  The Debtor shall pay the Holder of the Class 1 Claim as follows:

(1)  Commencing with the first Escrow Release Date in 2032 and continuing through each subsequent Escrow Release Date until the Class 1 Claim is paid in full, the Holder of the Class 1 Claim shall receive distributions equal to eighty percent (80%) of all Escrow Funds that are subject to release on each such date.

(2)  In addition to the distributions provided for in the immediately preceding paragraph, commencing on the tenth (10th) day of the first full month following the Effective Date, the Reorganized Debtor shall make monthly payments to the Holder of the Class 1 Claim in the amount of $50,000.

e.      <u>Interest rate</u>:  Interest shall accrue following the Effective Date on the unpaid balance of the Class 1 Claim at the Federal Judgment Rate.

f.      <u>Plan Effects Cure of Defaults</u>.  On the Effective Date, all defaults and alleged defaults, if any, under or in connection with the Class 1 Claim that existed or were alleged to exist as of the Effective Date shall be deemed cured, satisfied and of no further force or effect pursuant to and in connection with the implementation of the terms of this Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

**2.** <u>**Class 2**</u>: **Secured Claim of FIRST Insurance Funding**

Class 2 consists of the Secured Claim of FIRST Insurance Funding (the "<u>Class 2 Claim</u>"), as more fully described below. The Class 2 Claim shall be treated as follows:

a. <u>Description of Claim</u>. The Class 2 Claim is based upon a premium financing agreement (the "<u>PFA</u>") the Debtor entered into with FIRST Insurance Funding ("<u>FIRST</u>") following the Petition Date, pursuant to which FIRST financed annual insurance premiums for policies that renewed on November 10, 2020. The total premium amount was approximately $522,186.62, of which the Debtor paid a total of approximately $196,839.56 and FIRST financed the balance of approximately $332,321.20. Pursuant to the PFA, as amended, the Debtor agreed to make monthly payments to FIRST of $33,232.12 each for a period of ten months, commencing December 10, 2020.

b. <u>Allowance of Claim</u>. Upon the Effective Date, the Class 2 Claim shall be deemed allowed as a Secured Claim in the amount of $332,321.20, *less* the dollar amount of any monthly payments made to FIRST following December 10, 2020.

c. <u>Retention of Security Interest</u>. The Holder of the Class 2 Claim shall retain its security interest in the unearned premiums under the financed insurance policies, any credits generated by such policies, dividend payments, and loss payments which reduce the unearned premium, until the Class 2 Claim is paid in full.

d. <u>Payments</u>: The Debtor and Reorganized Debtor shall make monthly payments to the Holder of the Class 2 Claim in the amount of $33,232.12 each in accordance with the PFA unto the Class 2 Claim is paid in full.

e. <u>Interest rate</u>: Interest shall continue to accrue on the Class 2 Claim at the rate specified in the PFA until the Class 2 Claim is paid in full.

f. <u>Certain PFA Provisions Shall Not Apply</u>. Notwithstanding anything to the contrary in the PFA, the following provisions shall not apply on and after the Effective Date:

(1) Any provision that would make a bankruptcy filing or the pendency of a bankruptcy case by the Debtor an event of default.

(2) Any provision that is contrary to the exclusive jurisdiction of the Bankruptcy Court to resolve any disputes as to the PFA.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION – Page 11

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

**3. <u>Class 3</u>: Unsecured Claim of the State of Indiana**

Class 3 consists of the Unsecured Claim of the State of Indiana (the "<u>Class 3 Claim</u>"), as more particularly described below. The Class 3 Claim shall be treated as follows:

a. <u>Description of Claim</u>. The Class 3 Claim is based upon a Settlement Agreement, entered into between the State of Indiana ("<u>Indiana</u>") and the Debtor in September 2015. Pursuant to the Settlement Agreement, the parties settled and resolved litigation that Indiana had commenced against the Debtor alleging that the Debtor had sold tobacco products in Indiana without making escrow deposits as required under Indiana's Escrow Statutes.

b. <u>Allowance of Claim</u>. The Class 3 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount to which the Debtor and the Holder of the Class 3 Claim may agree or the Court may approve following Notice and Hearing. The Debtor believes the Class 3 Claim totals approximately $3,500,000.

c. <u>Payments</u>: Commencing on the tenth (10th) day of the first full month following the Effective Date, the Reorganized Debtor shall make monthly deposits into the Escrow Account designated for Indiana in the amount of $25,000 each, exclusive of the final deposit in some lesser amount, until the Class 3 Claim has been paid in full.

d. <u>Interest rate</u>: No interest shall accrue on the Class 3 Claim.

**4. <u>Class 4</u>: Unsecured Claim of the State of South Carolina**

Class 4 consists of the Unsecured Claim of the State of South Carolina (the "<u>Class 4 Claim</u>"), as more particularly described below. The Class 4 Claim shall be treated as follows:

a. <u>Description of Claim</u>. The Class 4 Claim is based upon a Settlement Agreement, entered into between the State of South Carolina ("<u>South Carolina</u>") and the Debtor in 2016 that settled and resolved all claims stated in litigation that South Carolina had commenced against the Debtor.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

   b. <u>Allowance of Claim</u>. The Class 4 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount to which the Debtor and the Holder of the Class 4 Claim may agree or the Court may approve following Notice and Hearing. The Debtor believes the Class 4 Claim totals approximately $2,500,000.

   c. <u>Payments</u>: Commencing on the tenth (10th) day of the first full month following the Effective Date, the Reorganized Debtor shall make monthly deposits into the Escrow Account designated for South Carolina in the amount of $15,000 each, exclusive of the final deposit in some lesser amount, until the Class 4 Claim has been paid in full.

   d. <u>Interest rate</u>: No interest shall accrue on the Class 4 Claim.

**5. <u>Class 5</u>: Unsecured Claim of the U.S. Department of Agriculture**

   Class 5 consists of the Unsecured Claim of the U.S. Department of Agriculture (the "<u>USDA</u>") (the "<u>Class 5 Claim</u>"). The Class 5 Claim shall be treated as follows:

   a. <u>Description of Claim</u>. The Class 5 Claim is based upon a judgment (the "<u>USDA Judgment</u>"), dated November 7, 2016, in the amount of $6,425,683.23 that was entered against the Debtor in *United States v. King Mountain Tobacco,* Case No. 1:14-cv-03162-RMP (E.D. Wash). On August 13, 2018, the Ninth Circuit Court of Appeals affirmed the district court. Thereafter, the parties entered into an Interim Payment Plan Agreement (the "<u>USDA Agreement</u>"), dated September 19, 2018, pursuant to which the Debtor was to make, and made, certain payments to the USDA's Commodity Credit Corporation (the "<u>CCC</u>") that the CCC would hold in escrow pending the exhaustion of the Debtor's appeal rights. On June 10, 2019, the United States Supreme Court denied the Debtor's petition for a writ of certiorari.

   b. <u>Allowance of Claim</u>. The Class 5 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount to which the Debtor and the Holder of the Class 5 Claim may agree or the Court may approve following Notice and Hearing. The Debtor believes the Class 5 Claim totals approximately $5,289,000.

   c. <u>Payments</u>: Commencing on the tenth (10th) day of the first full month following the Effective Date, the Reorganized Debtor shall make monthly

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

payments to the USDA in the amount of $30,000 each, exclusive of the final payment in some lesser amount, until the Class 5 Claim has been paid in full.

     d.    <u>Interest rate</u>:  Interest shall accrue on the Class 5 Claim following the Effective Date at the Federal Judgment Rate until paid in full.

**6.    <u>Class 6</u>:  Unsecured Claim of the U.S. Food & Drug Administration**

Class 6 consists of the Unsecured Claim of the U.S. Food & Drug Administration (the "<u>FDA</u>") (the "<u>Class 6 Claim</u>").  The Class 6 Claim shall be treated as follows:

     a.    <u>Description of Claim</u>.  The Class 6 Claim is based upon amounts owing to the FDA as reflected in a Repayment Agreement between the Debtor and the FDA, entered into in May 2018, showing an amount then owing of $3,923,656.84.

     b.    <u>Allowance of Claim</u>.  The Class 6 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount to which the Debtor and the Holder of the Class 6 Claim may agree or the Court may approve following Notice and Hearing.  The Debtor listed the FDA's claim in its Schedules in the amount of $2,903,104.13.

     c.    <u>Payments</u>:  Commencing on the tenth (10th) day of the first full month following the Effective Date, the Reorganized Debtor shall make monthly payments to the FDA in the amount of $25,000 each, exclusive of the final payment in some lesser amount, until the Class 6 Claim has been paid in full.

     d.    <u>Interest rate</u>:  Interest shall accrue on the Class 6 Claim following the Effective Date at the Federal Judgment Rate until paid in full.

**7.    <u>Class 7</u>:  Administrative Convenience Claims**

Class 7 consists of all Administrative Convenience Claim (as defined in Section II.A.1 above) (the "<u>Class 7 Claims</u>").  The Class 7 Claims shall be treated as follows:

     a.    <u>Allowance of Claims</u>.  Each Class 7 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor and the claimant may agree or the Court may approve following Notice and Hearing.  The Debtor's Schedules indicate that the Claims that would qualify for treatment under Class 7 total approximately $4,000.00.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

b.  <u>General Treatment.</u>  The Debtor shall pay each Holder of a Class 7 Claim a Cash payment equal to the full amount of such holder's Allowed Claim on the later of (i) ten (10) Business Days after the Effective Date, or (ii) three (3) Business Days following the date upon which the Debtor receives notice that such Claim has become an Allowed Claim.

c.  <u>Election for Treatment Under Class 7.</u>  Each holder of an Unsecured Claim in the amount of $1,000.00 or less is deemed to hold a Class 7 Claim and shall be treated under this Section IV.B.7.  Any holder of an Unsecured Claim in excess of $1,000.00 desiring treatment as a Class 7 Claim may elect to reduce its Allowed Claim to $1,000.00 by (i) timely returning a Ballot approving the Plan, and (ii) making an election on the Ballot for treatment as the holder of Class 7 Claim.  By making such election the holder expressly agrees that, upon the Effective Date, it shall be conclusively deemed to have (i) elected to be treated under this Section IV.B.7, and (ii) waived and released for all time and for all purposes the portion of its Claim greater than $1,000.00.

d.  <u>Provisions in Event of Over-Election.</u>  The payments set forth above for this Class 7 are in part based upon assumptions as to the total dollar amount of Claims that qualify for or elect to be treated under Class 7.  Specifically, the Plan assumes that Unsecured Claims totaling approximately $4,000.00 will qualify for or elect treatment under Class 7.  If for any reason the actual total dollar amount of Claims electing or qualifying for treatment under Class 7 exceeds the anticipated amount as set forth in this paragraph, the Debtor may, but shall not be required to, proceed with the Plan payments as set forth in Section IV.B.7.b. above notwithstanding such excess.  Alternatively, and notwithstanding a creditor's timely election on the Ballot, the Debtor shall have the right to limit participation in Class 7 by limiting the Class to Claims in reverse order of the dollar amount of each such claim (from smallest to largest) until the actual total dollar amount of such Claims substantially equals the projected total dollar amount of such claims as provided for in this paragraph, with all excluded claims becoming Class 8 Claims.

**8.**  **<u>Class 8</u>:  Unsecured Claims Other Than Claims in Classes 3, 4, 5, 6 and 7.**

Class 8 consists of all Unsecured Claims other than Allowed Claims that qualify for or elect treatment under Classes 3, 4, 5, 6 and 7 (the "<u>Class 8 Claims</u>").  The Class 8 Claims shall be treated as follows:

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

     a.   <u>Allowance of Claims</u>.  Each Class 8 Claim shall be allowed or disallowed, as the case may be, whether prior to or following Confirmation, in such amount as to which the Debtor and the claimant may agree or the Court may approve following Notice and Hearing.

     b.   <u>Payment Terms</u>.  Each holder of a Class 8 Claim shall, on a monthly basis, receive its Pro Rata share of a total monthly payment to Class 8 of $10,000.00, commencing in the first full month following the Effective Date, until all Class 8 Claims are paid in full. All payments shall be made on or before the tenth (10th) day of each month in which a payment is due.

     c.   <u>Interest rate</u>:  Simple interest shall accrue on the unpaid balance of each Class 8 Claim at the Federal Judgment Rate.

     d.   <u>Exclusion of Heritage Bank</u>.  Notwithstanding anything to the contrary herein, and unless the SBA revokes the forgiveness of Heritage Bank's loan to the Debtor pursuant to the Paycheck Protection Program, no distributions shall be made to Heritage Bank on account of such forgiven loan.

**9.**    <u>Class 9</u>:  **Affiliate Claims**

Class 9 consists of all Allowed Claims of Affiliates.  On the Effective Date, the Reorganized Debtor shall effect a setoff against each Class 9 Claim as to which a receivable is owing to the Reorganized Debtor to reduce the amount of such receivable on a dollar-for-dollar basis.  The Plan shall otherwise provide for no payment on any remaining balance owing to the Holder of a Class 9 Claim.

**10.**    <u>Class 10</u>:  **Equity Interests**

Class 10 consists of Equity Interests.  The Holder of the Equity Interests shall retain such Equity Interests following Confirmation and shall retain and exercise in the Holder's discretion all the privileges and benefits arising from such Equity Interests without further notice or order of the Court.

**C.**    **Impairment of Classes**

Each Class is impaired under the Plan (each, an "<u>Impaired Class</u>").  Pursuant to the provisions of § 1129(b) of the Bankruptcy Code, in the event an Impaired Class does not accept the Plan, the Debtor requests that the Court confirm the Plan without the consent of such Impaired Class.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

# ARTICLE V.
## CLAIMS OBJECTIONS AND TREATMENT OF DISPUTED CLAIMS

### A.   Administration of Claims

Except as otherwise provided for herein, each Claim shall be allowed or disallowed, as the case may be, in such amount as the Court shall determine, whether prior to or following Confirmation, and whether pursuant to this Plan or otherwise, upon such notice as the Bankruptcy Court or Bankruptcy Rules shall permit except that, after the Effective Date, the Debtor may settle or compromise any controversies regarding Claims without notice or further order of the Court.

### B.   Defenses and Counterclaims Assigned to Reorganized Debtor

On the Effective Date, the Debtor shall be deemed to have assigned to the Reorganized Debtor, and the Reorganized Debtor shall be deemed to have acquired and become the successor to, all defenses, counterclaims and setoffs, whether equitable or legal, of the Debtor to Claims held or asserted to be held against the Debtor.  Any objection to Claims must be filed and served in accordance with Bankruptcy Rule 3007; provided, however, that the foregoing limitations do not apply to any claims filed subsequent to Confirmation.

### C.   No Distribution on Disputed Claims

Notwithstanding any provision of the Plan specifying the time for payment of distributions to Holders of Claims, no payment or distribution shall be made to the Holder of a Disputed Claim until the time such Claim has been determined to be an Allowed Claim.  The existence of a Disputed Claim in a Class to which a distribution under this Plan is due shall not affect any distribution to other Holders in such Class. Notwithstanding the foregoing, if an objection is filed as to any claim of the United States, the Debtor shall make payments as provided under the Plan with respect to such claim into reserve until the claim dispute is resolved.  Upon the allowance of any Disputed Claim, the Holder shall be paid the amount that such Holder would have received had its Claim been an Allowed Claim on the Effective Date.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

# ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     **Assumption of Executory Contracts and Unexpired Leases.**

The Plan constitutes a motion by the Debtor to assume each of the executory contracts and unexpired leases set forth on **Exhibit D** hereto as of the Effective Date pursuant to § 365(a) of the Bankruptcy Code.  The Debtor does not believe that any cure pursuant to Bankruptcy Code § 365(b)(1)(A) will be owing in connection with such assumptions, and the Plan makes no provision for the payment of any such cure. Notwithstanding the foregoing, any party to an executory contract or unexpired lease scheduled for assumption as provided in this paragraph shall, within the same deadline and in the same manner established for objections to confirmation, file a Proof of Claim with the Bankruptcy Court for arrearage required to be cured by § 365(b)(1) of the Bankruptcy Code and any objections to the assumption.  A party's failure to assert such arrearage or to file an objection shall constitute such party's agreement to the assumption and a conclusive acknowledgment that no defaults or claims exist under said contract that require a cure.

**B.**     **Rejection of Executory Contracts and Unexpired Leases**.

The Plan constitutes a motion by the Debtor to reject all other executory contracts and unexpired leases of the Debtor as of the Effective Date that are subject to rejection under 11 U.S.C. § 365, except those executory contracts and unexpired leases previously assumed, or that are scheduled for assumption as set forth in Exhibit D hereto.  Any claim arising from the rejection of an executory contract or unexpired lease is a Class 8 claim to the extent it is an Allowed Claim.  Any entity holding a claim based upon the rejection of an executory contract or unexpired lease pursuant to this Section VI must file a Proof of Claim with the Bankruptcy Court within thirty (30) days after the Effective Date.  The failure of any such entity to file a Proof of Claim within the specified time period will result in the disallowance of such Claim.

# ARTICLE VII.
## MEANS FOR EXECUTION OF THE PLAN

**A.**     **Overview**

As detailed below, all Allowed Claims will be paid in full over time from net income of the Debtor and (in the case of Class 1) from distributions of Escrow Funds.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

**B.    Distributions of Escrow Funds.**

The primary source of distributions to Class 1 will come from Escrow Funds. Attached as **Exhibit E** is a schedule detailing the timing and amounts of funds that will be released from each of the Escrow Accounts.  As generally provided for under the Escrow Statutes of each Escrow State, Escrow Funds are released and revert back to the Debtor twenty-five (25) years after such funds were deposited in the Escrow Account, unless such funds were used "to pay a judgment or settlement on any released claim brought against such tobacco product manufacturer by the State or any releasing party located or residing in the State." *See e.g.* RCW 70.157.020(b)(2)(A).  As of the date of this Plan, there have been no distributions from any of the Escrow Accounts to any State, and the Debtor is not aware any pending claims or unsatisfied settlements or judgments in favor of any State that might otherwise result in a distribution from an Escrow Account.  The Reorganized Debtor shall distribute the allocable share of such released Escrow Funds to the Holder of the Class 1 Claim not later than five (5) business days after the Reorganized Debtor's receipt of such funds.

**C.    Continued Operations of Property**

The Debtor shall continue to own, maintain, operate and manage the Business in its sole discretion and in the ordinary course of business without further notice or order of the Court.  On and after the Effective Date, the Debtor shall have full authority and discretion to take any action in the exercise of its reasonable business judgment in connection with all aspects of the operation and maintenance of the Business and the Debtor's assets without further notice or approval of any court, so long as such action is consistent with and not directly contrary to other provisions of this Plan and the Order of Confirmation.

**D.    Business Lease, Agricultural Lease and Sublease**.

A portion of the Debtor's business premises operate on real property and improvements owned by the Equity Holder, while other portions operate on real property owned by the Yakama Nation or Yakama Nation Members and administered by the BIA and leased to the Equity Holder.

Upon the Effective Date, the Debtor shall enter into the Sublease.  Pursuant to the Sublease, the Debtor's ongoing rent obligations shall be equal to the sublessor's obligations to the BIA, and the Debtor shall pay the BIA directly for all such obligations.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

Upon the Effective Date, the Debtor shall also enter into the Business Lease. As set forth in the Business Lease, the Debtor shall set off the Affiliate Payable of Wheeler Logging against the rent owing during the first year of the Business Lease, and accordingly shall pay $95,000 for the first year of the New Lease. Beginning in the second year of the Business Lease and continuing through the term of the Business Lease, the Debtor shall pay rent in the amount of $375,000.00 per year. All payments of rent shall be made on July 1 of each and every year during the initial or renewal term of the Business Lease.

Finally, the Debtor shall also enter into the Agricultural Lease upon the Effective Date.

**E.     Assignment and Disposition of Causes of Action.**

**1.     General Treatment.**

On the Effective Date, the Debtor shall be deemed to have assigned to the Reorganized Debtor, and the Reorganized Debtor shall be deemed to have acquired and become the successors to, (i) all Avoidance Claims, and (ii) all claims and causes of action of the Debtor for relief against any other party other than Avoidance Claims (collectively, the "Causes of Action"). In general, and in the exercise of ordinary business judgment, the Reorganized Debtor shall investigate, pursue, prosecute and/or settle such Causes of Action. Any net proceeds from such Causes of Action, after payment of all fees, costs and expenses incurred in pursuing such Causes of Action, shall be distributed to the holders of Allowed Claims in Class 8.

**2.     Treatment of Certain Avoidance Claims.**

The Debtor listed in its Statement of Financial Affairs (Dkt No. 1) ("SOFA") various payments that it made to insiders and non-insiders during the periods one year and ninety days, respectively, prior to the Petition Date, some of which may qualify as Avoidance Claims. The treatment of such Avoidance Claims is set forth below:

a.     Payments to Indiana, South Carolina, USDA and FDA: The Debtor believes that it made each payment to each of these governmental entities in strict compliance with the terms of a settlement agreement or payment plan it had earlier entered into with such entity. The Plan therefore makes no provision for and is not dependent upon the recovery of any prepetition transfers to these entities.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

b. <u>Payments to Wheeler Kountry Korner</u>: As detailed in the Disclosure Statement, the Debtor estimates that some $30,000 to $50,000 of the payments the Debtor made prior to the Petition Date might be subject to avoidance. However, the Debtor is indebted to Wheeler Kountry Korner in the approximate amount of $584,000. Therefore, given the risks and costs of litigation in connection with the amount at issue, and notwithstanding Bankruptcy Code § 502(d), the Plan constitutes a motion pursuant to Bankruptcy Rule 9019 for approval of a settlement of all potential Avoidance Claims against Wheeler Kountry Korner by reducing the amount of the Claim of Wheeler Kountry Korner by $50,000 in full satisfaction of any such claims.

c. <u>Payments to Wheeler Rock Products</u>: The Debtor believes that both payments set forth in the SOFA would fall well within the scope of the "ordinary course of business" exception under Bankruptcy Code § 547(c)(2) and would not be avoidable. The Plan therefore makes no provision for and is not dependent upon the recovery of any prepetition transfers to this entity.

d. <u>Payments to Wheeler Logging</u>: Wheeler Logging is an entity wholly owned by the Equity Holder. As detailed in the Disclosure Statement, the Debtor made payments to Wheeler Logging totaling $280,000 during the year prior to the Petition Date for management services, the last of which was made some six months prior to the Petition Date, which payments may be deemed avoidable transfers. The Debtor understands that Wheeler Logging has no ability to pay a judgment in the amount of such payments. The Debtor and the Equity Holder have therefore agreed that the potential liability of Wheeler Logging on an Avoidance Claim will be settled by way of the setoff of lease payments that would otherwise be owing to the Equity Holder in connection with the New Lease up to a total setoff of $280,000, following which payments to the Equity Holder shall commence as set forth in the New Lease. The Plan constitutes a motion pursuant to Bankruptcy Rule 9019 for approval of such settlement.

**F.    Treatment of Certain Affiliate Receivables.**

**1.    Wheeler Fuel Distribution.**

Wheeler Fuel Distribution shall pay the Affiliate Receivable owing from it (the "<u>Wheeler Fuel Receivable</u>"), totaling $249,999.72, in sixteen (16) equal quarterly payments, commencing in September 2021, until the Wheeler Fuel Receivable is paid in full. Interest shall accrue on the unpaid principal balance of the Wheeler Fuel Receivable at the Federal Judgment Rate.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

### 2. Wheeler's Pawn Stars.

Wheeler Pawn Stars shall pay the Affiliate Receivable owing from it (the "Pawn Stars Receivable"), totaling $282,993.20, in sixteen (16) equal quarterly payments, commencing in September 2021, until the Pawn Stars Receivable is paid in full. Interest shall accrue on the unpaid principal balance of the Pawn Stars Receivable at the Federal Judgment Rate.

### 3. Wheeler Rock Products.

Wheeler Rock Products shall pay the Affiliate Receivable owing from it (the "Rock Products Receivable"), totaling $1,521,198.38, in twenty (20) equal quarterly payments, commencing in September 2021, until the Rock Products Receivable is paid in full. Interest shall accrue on the unpaid principal balance of the Rock Products Receivable at the Federal Judgment Rate.

### 4. Wheeler Cattle Receivable.

Wheeler Cattle shall pay the Affiliate Receivable owing from it (the "Wheeler Cattle Receivable"), totaling $1,968,337.14, in twenty (20) equal quarterly payments, commencing in September 2021, until the Wheeler Cattle Receivable is paid in full. Interest shall accrue on the unpaid principal balance of the Wheeler Cattle Receivable at the Federal Judgment Rate.

## G. Maintenance of Insurance.

The Debtor shall continue to maintain insurance coverage in the same or more favorable amounts and type as the Debtor held as of the Petition Date.

## H. Continued Existence and Vesting of Assets in Reorganized Debtor

On the Effective Date, the Reorganized Debtor shall continue to exist in accordance with the laws of the Yakama Nation and federal law, and pursuant to its Articles of Incorporation and Bylaws in effect prior to the Effective Date. All matters provided for in the Plan involving the corporate structure of the Debtor and any corporate action required of the Debtor or Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect without any requirement or further action by the Equity Holder or directors of the Debtor and/or the Reorganized Debtor. Except as otherwise provided for in Section IV.B. of the Plan, on and after the

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

Effective Date each item of property of the Debtor, including all claims, rights and causes of action and any property acquired by the Debtor during the Reorganization Case shall vest in the Reorganized Debtor free and clear of all Claims, liens, charges, other encumbrances and interests. On and after the Effective Date, the Reorganized Debtor may operate the Business and may use, acquire and dispose of property without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.

## I.    Officers and Directors/Continued Management.

Truman J. Thompson is the Chief Executive Officer and Chief Financial Officer of the Debtor, and shall continue to serve in such capacities following the Effective Date. The Equity Holder does not receive any compensation from the Debtor whatsoever and there is no intention that she will in the future.

## J.    Distributions Under the Plan

The Reorganized Debtor shall make all distributions required under the Plan.

## K.    Cancellation of Indebtedness

On the Effective Date, except for the purpose of evidencing a right to distribution under this Plan, any notes or other instruments or documents evidencing or creating any indebtedness or obligations of, or interest in, the Debtor, except assumed executory contracts, and/or such notes or other instruments evidencing indebtedness or obligations of the Debtor that are unimpaired, reinstated, or amended and restated under this Plan, shall be cancelled and terminated and of no further force or effect.

## ARTICLE VIII.
## MISCELLANEOUS PROVISIONS

## A.    Unnegotiated Distribution Checks

Pursuant to § 347 of the Bankruptcy Code, ninety (90) days after any distribution to any unsecured creditor by the Reorganized Debtor provided for herein, the Reorganized Debtor shall stop payment on any check on such distribution remaining unpaid to a holder of an Allowed Claim and funds shall be returned to the Reorganized Debtor. From and after the date the Reorganized Debtor stops payment on any distribution check pursuant to this paragraph, the holder of the Allowed Claim on account of which such check was issued shall be entitled to receive no further

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

distributions on account of his claim and such holder's Allowed Claim shall thereupon be deemed satisfied in full.

**B.    Mailing List; Returned Distribution Checks**

The official listing of creditor identities and mailing addresses is maintained by the Clerk of the Bankruptcy Court, United States Bankruptcy Court, 402 East Yakima Avenue, Suite 200, Yakima, WA  98901 (the "Official Mailing List").  It shall be the obligation of each creditor and/or party in interest to assure that the Official Mailing List is current and accurate as to each such person or entity.  In the event that a distribution check, that has been properly posted to the creditor's address as set forth in the Official Mailing List, is returned as undeliverable by the United States Postal Service, the Reorganized Debtor shall be authorized, but not required, to void such check with the applicable funds becoming subject to further distribution pursuant to this Plan, and the claim of such creditor being deemed satisfied in full.

**C.    Administrative Claims Bar Date**

The deadline for submission of all claims entitled to priority pursuant to §§ 507(a)(1) and (b) of the Bankruptcy Code incurred prior to Confirmation, with the exception of fees and costs of Professional Persons, shall be thirty (30) days following the Effective Date.  Failure to file a claim by this date shall conclusively bar the claimant from asserting his claim, which claim shall be forever discharged.

**D.    Employment of Professional Persons**

The Reorganized Debtor shall be authorized to employ and compensate Professionals following Confirmation upon such terms as the Reorganized Debtor deems reasonable and appropriate without further notice or order of the Court.

**E.    Payments Shall Be Timely**

The Reorganized Debtor shall timely make all payments required under this Plan.  Without limiting the generality of the foregoing, the Reorganized Debtor shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following confirmation of the Plan until the Bankruptcy Case is closed. After confirmation of the Plan, the Reorganized Debtor shall serve on the United States Trustee quarterly a financial report for each quarter (or portion thereof) the case remains open.  The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

**F.    Treatment of Negotiable Instruments.**

Any negotiable instrument held by the holder of a Claim shall be deemed exchanged, canceled or satisfied, as the case may be, on the Effective Date.

**G.    Stay of Confirmation Order Shall Not Apply**

The stay of enforceability of the order of Confirmation pursuant to Bankruptcy Rule 3020(e) shall not apply, and the order of Confirmation shall be enforceable according to its terms absent further order of the Court.

**H.    Event of Default; Consequence of Default**

An event of default shall occur if there is a material breach of this Plan.  In such an event, the party alleging such default shall provide written notice of the alleged default to the Reorganized Debtor and its attorneys, at each of the following addresses:

> Truman J. Thompson
> King Mountain Tobacco Company, Inc.
> P.O. Box 422
> White Swan, WA 98952-0422
> Jay@kingmountaintobacco.com

And:
> James L. Day
> Richard B. Keeton
> Bush Kornfeld LLP
> 601 Union Street, Suite 5000
> Seattle, WA  98101-2373
> Phone: 206-292-2110
> Fax: 206-292-2104
> Emails: jday@bskd.com and rkeeton@bskd.com

If, after thirty (30) days following the Reorganized Debtor's and its counsel's receipt of the notice of default, the Reorganized Debtor and such party have been unable to resolve, or the Estate has been unable to cure, the asserted default, such party may proceed with any remedies available to it under applicable law, provided that nothing herein shall limit or affect the Reorganized Debtor's right to seek appropriate relief from any court of competent jurisdiction.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

## ARTICLE IX.
## SATISFACTION OF INDEBTEDNESS; PLAN IS BINDING

Except as specifically provided in this Plan or in the Confirmation Order the distribution made to the various classes of creditors as provided for in this Plan shall be in full and complete satisfaction of their Allowed Claims and Allowed Interests. The terms of this Plan and the Confirmation Order shall be binding on all parties regardless of whether or not (a) the party's claim was scheduled, (b) a proof of claim was filed, (c) the claim is an Allowed Claim, or (d) the holder thereof voted to accept the Plan.

## ARTICLE X.
## INJUNCTION

All Entities who have held, currently hold, or may hold a debt or Claim against the Debtor, the Estate, the Reorganized Debtor, or its respective property that is based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, that otherwise arose or accrued prior to the Effective Date, or that is otherwise discharged pursuant to the Plan, shall be permanently enjoined from taking any of the following actions on account of any such discharged debt, Claim, or Interest (the "Permanent Injunction"): (i) commencing or continuing in any manner any action or other proceeding against the Debtor, the Estate, the Reorganized Debtor, or its respective property that is inconsistent with the Plan or the Confirmation Order, including without limitation any action the effect of which would be a Delisting; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtor, the Estate, the Reorganized Debtor, or its respective property other than as specifically permitted under the Plan, as approved by the Confirmation Order; (iii) creating, perfecting, or enforcing any lien or encumbrance against the Debtor, the Estate, the Reorganized Debtor, or its respective property; and (iv) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, the Confirmation Order, or the discharge provisions of § 1141.

## ARTICLE XI.
## MODIFICATIONS OF THE PLAN

Pursuant to the provisions of § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtor reserves the right to modify or alter the provisions of the Plan at any time prior to or subsequent to Confirmation.

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

# ARTICLE XII.
## RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

Notwithstanding Confirmation, until entry of a final decree, the Bankruptcy Court shall retain jurisdiction to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, the Court shall retain jurisdiction for the following purposes:

1. Fixing and allowing any claim as a cost and expense of the administration of the Bankruptcy Case;

2. Re-examining any claim that has been allowed;

3. Hearing and determining objections to claims. The failure of the Debtor to object to, or to examine any claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine any claim in whole or in part;

4. Hearing and determining any action brought by the Reorganized Debtor on behalf of the Estate seeking to avoid any transfer of an interest of the Debtor in property, or any obligation incurred by Debtor, that is avoidable pursuant to applicable law;

5. Hearing and determining all causes of action, controversies, disputes, or conflicts between or among the Debtor, and any other party, including those that were pending prior to Confirmation;

6. Hearing and determining all questions and disputes regarding title to the property of the Estate;

7. Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or the Order of Confirmation as may be necessary to carry out the purpose and intent of the Plan;

8. Issuing any order necessary to implement the Plan or Order of Confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor, the Estate and the Reorganized Debtor from actions of creditors, or other parties-in-interest;

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w

9.    Hearing and determining any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any parties-in-interest with respect thereto; and

10.    The modification of the Plan after Confirmation pursuant to the Bankruptcy Rules and the Bankruptcy Code in accordance with Article XI above.

Nothing in this Article XII shall be deemed to expand the jurisdiction of the Bankruptcy Court beyond that granted to it under 28 U.S.C. §§ 157, 1334.

## ARTICLE XIII.
## ENTRY OF CLOSING ORDER BY THE BANKRUPTCY COURT

The Bankruptcy Court shall enter an order concluding and terminating the Reorganization Case upon application of the Reorganized Debtor.

RESPECTFULLY SUBMITTED this 17th day of March, 2021.

KING MOUNTAIN TOBACCO COMPANY, INC.

_____*/s/ Truman J. Thompson*_____
By: Truman J. Thompson
Its Chief Executive Officer and
    Corporate Vice President

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION – Page 28

BUSH KORNFELD LLP
LAW OFFICES
601 Union St., Suite 5000
Seattle, Washington 98101-2373
Telephone (206) 292-2110
Facsimile (206) 292-2104

ec17hh010w